GEORGE H. RICHARDSON and C. AMORY STEVENS, Appellants, v. JAMES M. HERRON, JAMES H. SPENCER and HORACE K. THURBER, Respondents.

*General assignment — 1877, chap. 466, as amended by chapter 328 of 1884 — it cannot be attacked for a defect which does not injure the complainant — it is not invalidated by reason of its containing no provision giving a preference to wages of employees.*

In this action, brought by judgment creditors of a firm to have a general assignment made by it for the benefit of creditors declared void, the complaint alleged that "as plaintiffs are informed and believe the said James

M. Herron and James H. Spencer were at the time of the execution of said assignment indebted to sundry persons for wages and salaries actually owing to such employees of said defendants, and that such wages and salaries were not preferred in said assignment before any other debts of said defendants as required by law, but that said assigned property and its proceeds was applied by said assignment to the payment of other debts of said defendants in priority to said wages and salaries, and these plaintiffs further allege on information and belief that said assignment is fraudulent and void."

The plaintiffs were not employees of the said firm, nor did the complaint state the amount of such wages and salaries so due, nor the names of the persons to whom the same were owing.

*Held,* that as the failure of the assignors to give a preference to the wages and salaries of employees was not an injury, but a benefit to the plaintiffs, they could not object to the omission of the preference therefrom, and that a demurrer interposed to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action should be sustained. (DANIELS, J., dissenting.)

In amending section 29 of chapter 466 of 1877, by chapter 328 of 1884, so as to direct that "in all assignments made in pursuance of this act, the wages or salaries actually owing to the employees of the assignor or assignors at the time of the execution of the assignment *shall be preferred before any other debt,*" it was intended to secure a preference of the wages or salaries actually owing to employees of persons who made an assignment under the act, whether such preference was or was not expressed in the assignment, and the omission therefrom of a clause expressly preferring the same does not invalidate the assignment. (DANIELS, J., dissenting.)

APPEAL from a judgment, entered upon an order sustaining a demurrer interposed to the complaint.

*James M. Bishop,* for the appellants.

*More, Aplington & More,* for the respondents.

DAVIS, P. J.:

The demurrer in this case presents but a single question, and that is whether an assignment for the benefit of creditors is void when the assignor owes any wages or salaries, at the time of the execution of the assignment, to any person or persons in his employment, because such wages or salaries are not preferred in and by the instrument of assignment before any other debt owing by the assignor.

In this case the complaint alleges that the assignors, at the time of the execution of the assignment, were indebted to sundry persons for wages and salaries actually owing to them without specifying any person or employee. The plaintiffs were not employees of the

assignors, but had recovered a judgment against them as general creditors and not for wages or salaries. The court at Special Term disposed of this question upon the single ground that the plaintiffs. cannot avoid the assignment if the alleged illegality benefits instead of injuring them. On this question the court pronounced the following opinion :

Andrews, J.— The assignment which it is sought to set aside transferred property of the value of over $90,000. The plaintiffs have obtained a judgment against the defendants Herron & Spencer, who were the assignors, for $2,912.68, and seek in this action to have such assignment set aside upon the sole ground that it is void, because wages and salaries owing to employees of the assignors were not preferred in the assignment as required by chapter 328 of the Laws of 1884.

The plaintiffs were not employees of the defendants Herron & Spencer, nor does the complaint state the amount of such wages and salaries nor the persons to whom the same was owing. The complaint merely alleges that, "as plaintiffs are informed and believe, the said James M. Herron and James H. Spencer were, at the time of the execution of said assignment, indebted to sundry persons for wages and salaries actually owing to such as employees of said defendants, and that such wages and salaries were not preferred in said assignment before any other debts of said defendants as required by law, but that said assigned property and its proceeds was applied by said assignment to the payment of other debts of said defendants in priority to said wages and salaries; and these plaintiffs further allege, on information and belief, that said assignment is fraudulent and void."

No facts tending to show that the assignment is fraudulent or void are stated, except those set forth in the above quotation, and those might be true if wages and salaries were owing when the assignment was made, to two employees, and to an amount not exceeding five dollars each.

The ground upon which the assignment is attacked is therefore, so far as the plaintiffs are concerned, a technical one, and as they are not employees, it seems to me to be a fatal objection to the maintenance of the action that the plaintiffs are not injured by the failure of the assignors to make such employees preferred creditors.

It is undoubtedly true that assignments have been set aside upon grounds more or less technical.

In *Rennie* v. *Bean* (24 Hun, 123) the assignment was executed and delivered to the assignee, who orally accepted the trust, but the provision of the act of 1877, " that the assent of the assignee, subscribed and acknowledged by him, shall appear in writing," was not complied with, and this was held to invalidate the assignment, and the failure to observe various other requirements of the statute have been held to render the assignment void.

Objections to the validity of an assignment based upon grounds of this character are available to every creditor of the assignor, because they go to the validity of the assignment as a whole, but where a particular class of creditors, or a particular creditor, is prejudiced by some provision of an assignment, no one but the person or persons injured or defrauded can avoid the assignment on that ground. (*Fox* v. *Heath*, 16 Abb., 163 ; *Morrison* v. *Atwell*, 9 Bosw., 503 ; *Scott* v. *Guthrie*, 10 id., 408 ; *Powers* v. *Graydon*, Id., 630.)

The general rule on the subject, and the one which I think is decisive of this case, is clearly stated by the learned counsel for the plaintiffs in section 219 of his very excellent treatise on insolvent debtors, as follows : "A creditor cannot avoid an assignment because it is illegal, if it benefits instead of injures him." (Citing *Fox* v. *Heath*, supra, and other cases.) " No creditor but the one who is hindered, delayed or defrauded by the provision complained of can assail the instrument on that account. Thus, where a general assignment by a general partnership gives preference to the payment of the partnership debts, a creditor of the partnership cannot have the assignment set aside as void, because its provisions as to the subsequent payment of creditors of individual partners contain a direction calculated to hinder and delay them." (Citing *Morrison* v. *Atwell*, *Scott* v. *Guthrie*, and *Powers* v. *Graydon*, supra.)

The failure of the assignors to give a preference to the wages and salaries of employees is not an injury but a benefit to the plaintiffs in this action, and in my opinion it is an objection to the assignment, which is available to no one but such employees themselves. The demurrer to the complaint must be sustained."

In our judgment this opinion disposes correctly of the issue upon the demurrer on the ground which it discusses.

But there is, we think, still another ground fatal to the plaintiffs. The question arises under section 29 of chapter 466 of the Laws of 1877, as amended by chapter 328 of the Laws of 1884. That section, as amended, reads as follows:

" SEC. 29. In all assignments, made in pursuance of this act, the wages or salaries actually owing to the employees of the assignor or assignors, at the time of the execution of the assignment, shall be preferred before any other debt; and should the assets of the assignor or assignors not be sufficient to pay in full all the claims preferred, pursuant to this section, they shall be applied to the payment of the same *pro rata* to the amount of each claim."

This statute is to have a reasonable construction : Its object and purpose are to secure a preference of the wages or salaries actually owing to employees of persons who make assignments under the act. The preference thus given is manifestly designed to be a statutory one and to be effective in all cases where assignments are made under the act, whether expressed in the body of the instrument or not. The section is to be read as though its words were : " In cases of all assignments " or " whenever assignments are made in pursuance of this act the wages or salaries  *  *  *  shall be preferred before any other debt."

It was not the design of the legislature to declare any assignment, which did not in its body prefer wages or salaries actually owing, to be absolutely void for all purposes, but rather to declare that such wages or salaries, whether in terms preferred or not, should be paid out of the assets of the assignor before any other debt. The manifest intent being to give an absolute preference in administration to such wages or salaries, the legislature could not have intended to provide that if such wages or salaries were not actually preferred in the instrument, any general creditor might, for that reason, avoid the assignment and seize the assets for his own benefit and thus wholly defeat the payment of such wages or salaries. The effect of the plaintiffs' attack upon the assignment, if successful in this case, will of course accomplish that very thing, and instead of insuring protection to the wages or salaries actually owing to employees, will defeat or prevent their payment and thus overthrow the scheme of the statute. It was not the object of the legislature to give such an opportunity or right to general creditors, but to impose upon the

assignee the duty of paying out of the assets of the assignee such wages in full in preference to any other debt, and that manifest intent ought to be sustained if practicable by the courts. That intent can only be completely carried out by holding that it attaches to the assets a statutory lien which neither the assignee, nor the assignor nor any creditor can defeat. But to hold that the failure of the party to express this preference in the assignment itself wholly defeats it, is to thwart the effort of the legislature to secure the payment of such wages or salaries under all circumstances when an assignment is made. The intention is well illustrated by reference to the provisions of the statutes of the United States, which declare that whenever any person indebted to the United States is insolvent the debts due to the United States shall be first satisfied, and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof. (Stat. of the U. S., § 3466.)

There can be no reasonable question, we think, of the power of the legislature by statute to make the provision intended to be made by the amendment passed in 1884, and we can conceive of no good reason why the courts should not carry out the provisions of the statute according to its manifest intent. A contrary construction, though plausibly justified by the language of the section, would clearly, in many cases totally, defeat the object of the legislature. The spirit of the maxim "*qui haeret in litera haeret in cortice*" would be strikingly exemplified by such a literal construction, inasmuch as it would lead to results manifestly fatal to the legislative intent. Every assignment made by a debtor or by a firm composed of many persons would be open to the inquiry by mousing creditors, whether the assignor or assignors had not some indebtedness " for wages or salaries *actually owing*" (they need not even be due) to some employee either in his or their business, or to a domestic servant in his household; and the existence of a single dollar or cent of such indebtedness, *not preferred in the body of the assignment,* must be fatal to its validity, though such fatality deprives his servant of his or her pay for the benefit of another creditor whom the statute does not intend to prefer. This would lead to litigations to determine whether or not the assigning creditor did or did not, at the time of making his assignment, owe some trifling

debt to an employee or to a domestic servant, but unknown to him because the mistress of the household regulates such affairs, or forgotten at the moment, in which litigation the employee or servant would not be a party, but may, by his or her testimony, be compelled to defeat the assingment and thus lose the plain statutory preference which the legislature intended to give.

If so strict a construction is to prevail, then of course it might be held, under the twenty-ninth section, that the language " in all assignments," * * * the wages or salaries, * * * *" shall be preferred before any other* debt," fixes the order in which preferences must appear *in the assignment,* and that not placing them first in order the assignment is fatal to its validity; but such a strict construction would be intolerable.

This provision applies to all assignments made under the act whether preferences are made or not. Where a debtor assigns all his property for the benefit of his creditors to be equally distributed, will it be contended that a failure to prefer debts for wages or salaries to employees in such an instrument makes the assignment void. Yet such must be the effect if the strict construction claimed for the section be allowed, or will it be said that the preference to wages is only given where some other debt is preferred in order to answer the language *" shall be preferred before any other debt."* That would be an absurd ground on which to defeat the assignment; yet, unless we hold that the preference is statutory and attaches to all cases, the manifest object of the legislature is thwarted if a general creditor can defeat all assignments that do not, in so many words, make a preference of wages.

It is supposed that this question is in some way analogous to the provision of section 1 of the act, requiring such assignments to be acknowledged by the assignors, etc, in order to be valid. The failure to comply with that requirement has been held to invalidate the instrument. (*Hardmann* v. *Bowen,* 39 N. Y., 196; *Britton* v. *Lorenz,* 45 id., 51.) But there is no analogy between the questions. The one prescribes a form or mode of execution of the instrument which must be complied with, or it cannot be delivered as a valid assignment. Without compliance in some sufficient form with that specific requirement there is no assignment. But in the case before us the instrument is valid and complete in form and mode of exe-

cution. The question is quite *dehors* the instrument itself and arises wholly upon an extrinsic fact, which is a subject of proof outside of the instrument, and must depend upon facts to be established by litigation. The cases cited, therefore, have no legitimate bearing upon the controversy of this appeal. It has long been settled that where a statute prescribes that the execution of an instrument must be evidenced in a particular mode or form, as in case of wills, deeds of married women, etc., the specified mode must be substantially complied with, or the instrument is invalid for want of legal execution.

But in this case the object of the statute is not to prescribe a form, but to secure protection to a particular kind of indebtedness — not to defeat an assignment, but to impress upon every one a special preference; and it needs no argument to show that that object is far more effectually secured by the direct force of a statute than by the provisions of an assignment. The law, therefore, by a just and sensible construction of section 29, provides for the benefit of all classes of employees of an assignor, protection for his or her wages or salaries in preference of any other indebtedness, without regard to the form of the assignment. This the legislature intended to do; and did not design to set a trap, for the benefit of general creditors, to enable them to destroy an assignment because such debts had not been preferred in its body in so many words.

For these reasons also, as well as those so well expressed in the opinion of the court below, the judgment should be affirmed.

BRADY, J.:

The design of the amendment of section 29 by the act of 1884 was to secure the payment of wages and salaries, and the law became a part of the assignment by legal and legislative intendment whether referred to or not, so as to impose upon the assignee the imperative duty of paying such wages and salaries first out of the assets. If, as suggested by DAVIS, P. J., the omission in the assignment to prefer them invalidates it, the protection sought is lost and the creditor reaps the benefit. I agree, therefore, with him.

DANIELS, J. (dissenting):

The plaintiffs brought this action as judgment creditors of James H. Herron and another, to obtain a judgment declaring a general

assignment void, which the debtors made for the benefit of their creditors. The objection taken to the assignment is that it failed to comply with the direction contained in chapter 328 of the Laws of 1884, and that they owed debts entitled to be protected under that act. This act is an amendment to chapter 466 of the Laws of 1877, relating to assignments made by debtors for the benefit of their creditors and it is directed in it that " in all assignments made in pursuance of this act, the wages or salaries actually owing to the employees of the assignor or assignors at the time of the execution of the assignment, shall be preferred before any other debt," this language is entirely plain and free from all possible ambiguity. And accordingly it is required to be construed just as the legislature has used it in the enactment of this direction. For the rule of construction is settled by authority, when the language of an act may be plain and clear having a precise or definite meaning, that it shall be construed and carried into effect according to the import of its language. (*Johnson* v. *Hudson River R. R. Co.*, 49 N. Y., 455; *Benton* v. *Wickwire*, 54 id., 226.)

The courts, therefore, have no discretion upon this subject and cannot substitute for what the law has directed to be done any other device securing the same end. The language of the act is that this preference " shall be " in all assignments. The direction is mandatory that it shall be so made and it carries with it a plain implication that no assignment for the benefit of creditors shall be otherwise made. The language of section 2 of the act amended by this act directing that every assignment for the benefit of creditors shall be duly acknowledged before an officer authorized to take the acknowledgment of deeds, is no more explicit or mandatory than this direction that all assignments shall contain a preference of the wages or salaries owing to the employees of the assignors.

It was enacted in similar language by which the legislature declared that the assignment shall be duly acknowledged, as it is in the act of 1884 declared that these debts shall be preferred in all assignments.

A compliance with the direction made for the acknowledgment of the assignment has been held to be essential to the legal validity of the instrument itself. This construction and effect was given to the same direction contained in section 1 of chapter 348 of the Laws of 1860, which was repealed by the act of 1877. Upon this sub-

ject the language in each of the acts was exactly the same, and in considering its effect as it was employed in the act of 1860, it was held where the assignment was not acknowledged, that it was ineffectual and void. (*Hardmann* v. *Bowen*, 39 N. Y., 196.) And that was approved in *Britton* v. *Lorenz* (45 id., 51), and followed in *Montfort* v. *Montfort* (24 Hun, 120). And as the language of the act of 1884 is no more imperative but similar in its terms so far as it directs what shall be done, as that directing the acknowledging of the assignment, these authorities require the same rule to be applied and followed, as they have applied to the direction for the acknowledging of the assignment. What was said in the opinion of the first case referred to, concerning the necessity of a compliance with a direction for the acknowledging of the assignment is equally as applicable to the act of 1884. It was there held by the court that the direction that an assignment shall be acknowledged contains "a clear negative against an assignment being made in any other way." And "when the statute declares in terms that every assignment shall be acknowledged before delivery, it by necessary implication provides that no assignment shall be delivered without acknowledgment," and as the assignment then in controversy had not been acknowledged it was held to be void. The preference required to be given by the act of 1884 is to be inserted in the assignment. The act declares that "in all assignments" these "wages or salaries" "shall be preferred before any other debt." That preference has been provided to render the assignment complete, and must precede its execution and acknowledgment. It cannot lawfully be made without containing this preference. It is true that the legislature might have secured the same result by directing the assignee in the first instance to pay all such debts, but that it was not deemed proper to do. It took the other course, and directed that the preference should be made in the assignment, and by that direction and the implication to be derived from it, prohibited the assignment from being made in any other manner. By failing to observe the statutory direction the assignment was not made as the law directed it should be, but it has violated the express provision of this statute, and being made in violation of law it follows that it did not become operative as an assignment of the debtors property.

The persons designed to be protected by the statute will not be deprived of their rights to payment by this construction and enforcement of it, for they will be at full liberty to avail themselves of all legal proceedings to obtain the payment of the debts due to them out of the property of their debtors. That is the common right of all creditors which the statute did not intend in any manner to interfere with. It went no farther than to impose this obligation upon the debtors, in case they made a general assignment. If the debtors attempted to do that, they could legally do it in no other manner than by complying with the direction contained in the law. They failed to do that, and their assignment was necessarily void, and that entitled the plaintiffs as judgment creditors to appropriate the assigned property so far as it may be necessary to the payment of their judgment.

The judgment should be reversed, and a judgment entered overruling the demurrer to the complaint, with leave to the defendants to answer in twenty days on payment of the costs of the appeal, and of the demurrer.

Judgment affirmed.